**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sierra-Sonora Enterprises, Inc.; Jackson Hole Partners, LP; Grand Teton Partners, LP,<br><br>        Plaintiffs,<br><br>vs.<br><br>Domino's Pizza, LLC; TISM, Inc.,<br><br>        Defendants. | No. CV 10-0105-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Defendant Domino's Pizza, LLC's Motion to Dismiss (Doc. # 11). For the reasons that follow, the Court grants in part and denies in part Defendant's motion.

**I.    Background**

As of February 2002, Plaintiff Sierra-Sonora Enterprises, Inc. ("Sierra") owned and operated over eighty Domino's Pizza franchises. Beginning in 1999, Defendant approached Rick Flory–the sole shareholder of Sierra and general partner of Plaintiffs Jackson Hole Partners, LP and Grand Teton Partners, LP–with an offer to sell certain of Defendant's stock in a private offering to Plaintiffs. Eventually, an agreement was reached between the parties and Plaintiffs purchased the offered stock.

In February 2002, the parties entered into an agreement wherein Plaintiffs agreed to sell both its franchises and its previously acquired stock back to Defendant. Defendant

represented that the repurchases were part of the preparation for the initial public offering ("IPO") of Defendant's stock. Plaintiffs also allege that Defendant represented that the purchase price of the stock would be the same as the calculated price of Domino's stock to be sold in the IPO. The actual purchase price paid by Defendant for the stock was an averaged price per share of $11.676. The IPO of Defendant's stock took place in July 2004 at an averaged price per share of $14.00. Plaintiffs allege that they have suffered a loss because the amount actually paid by Defendant for the repurchase of the stock was far less than the IPO price.

In August 2009, Plaintiffs filed suit in Maricopa County Superior Court, alleging the following causes of action: 1) breach of contract; 2) breach of the duty of good faith and fair dealing; 3) unjust enrichment; 4) common law fraud/fraudulent misrepresentation; 5) negligent misrepresentation; and 6) securities fraud. Defendant timely removed to this Court, and now seek to dismiss the entirety of Plaintiffs' action.

**II.     Analysis**

*A.     Legal Standard*

To survive a Federal Rule of Civil Procedure 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id.* Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could

satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE §1202, pp. 94, 95(3d ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S.Ct. at 1949. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id*. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

B.   *Plaintiff Sierra's Capacity to Sue*

Defendant argues that because Plaintiff Sierra was dissolved in 2008, Plaintiff Sierra cannot maintain this suit. The parties agree that Arizona law applies in resolving this issue. The Arizona legislature has addressed this issue by providing that "[d]issolution of a corporation does not . . . [p]revent commencement of a proceeding by or against the corporation in its corporate name or any officers, directors or shareholders or affect applicable statutes of limitation. A.R.S. § 10-1405(B)(5). *See also Ruck Corp. v. Woudenberg*, 611 P.2d 106, 110, 110 n.2 (Ariz. Ct. App. 1980); *In re Prism Properties, Inc.*,

1  200 B.R. 43, 45-46 (D. Ariz. 1996). Plaintiff Sierra's claims relate to events that occurred before it was dissolved, and Plaintiff Sierra is a properly named party. Defendant has not cited any Arizona cases that precluded a dissolved corporation from maintaining an action for claims that arose before the corporation was dissolved. Given the Arizona legislature's pronouncement on this issue, Plaintiff Sierra may rightfully maintain the present action.

*C.    Breach of Contract Claim*[1]

Plaintiffs argue that during the negotiations leading up to the parties' agreement, Defendant represented to Flory that Plaintiffs would receive the IPO price for Defendants' stock. Plaintiffs assert that the agreement entered into by the parties "plausibly supports that this was the intent of the parties. The Agreement was breached when that initial public offering price was not given to Sierra." (Doc. # 17 at p. 5.)

The pertinent portion of the parties' agreement provides:

> **1.8  TISM, Inc. Stock**
>
> At Closing . . . TISM, Inc. will purchase from Grand Teton Partners, LP and Jackson Hole Partners Ltd. all of the stock in TISM, Inc. that either of them owns, at a price per share computed by TISM, Inc., subject to any withholdings deemed necessary by TISM, Inc. to comply with applicable law. Upon receipt of the consideration for the shares of TISM, Inc. stock, the assignors of the stock shall have no further right to any further compensation for the stock, regardless of any subsequent increase in value, stock split, dividends declared or paid, or any other benefit which many accrue to shareholders owning stock after Closing.

(Doc. # 11, Ex. 1, pp. 7-8.)

In Arizona, a court must attempt to enforce a contract according to the parties' intent. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1138 (1993). The parties' intent

---

[1] Defendant argues that Plaintiffs fail to allege an actual breach of the parties agreement. The Court disagrees. Plaintiffs allege that "[t]he Agreements entered into by the parties, both written and oral, constitute a contract and/or contracts between the parties. Defendants have breached one or more of said contracts by its actions and inactions as stated above."   (Doc. # 1, Ex. A, p. 8, ¶ 38.)  Plaintiffs also refer to the agreement between the parties throughout their complaint. It is clear from Defendant's motion to dismiss that it understands Plaintiffs' breach of contract claim and the agreement Plaintiffs are alleging was breached. Under a notice pleading standard, Plaintiffs have sufficiently alleged a breach of contract.

- 4 -

1 is a question of law when the terms of the agreement are plain and unambiguous. *Chandler Med. Bldg. Partners v. Chandler Dental Group*, 855 P.2d 787, 791 (Ariz. Ct. App.1993). If a contract is ambiguous, however, "the parties may offer evidence to help interpret it, in which case construction is a question for the jury." *Hall Family Props., Ltd. v. Gosnell Dev. Corp.*, 916 P.2d 1098, 1104 (Ariz. Ct. App.1996) (citations omitted). "Language in a contract is ambiguous only when it can reasonably be construed to have more than one meaning." *In re Estate of Lamparella*, 109 P.3d 959, 963 (2005) (citations omitted). The Court thus applies a reasonableness standard in determining whether language is susceptible to more than one interpretation. *Gesina v. Gen. Elec. Co.*, 780 P.2d 1380, 1386 (Ariz. Ct. App. 1988). In making this determination, the Court may look to extrinsic evidence: "the judge first considers the offered evidence and, if he or she finds that the contract language is 'reasonably susceptible' to the interpretation asserted by its proponent, the evidence is admissible to determine the meaning intended by the parties." *Taylor*, 854 P.2d at 1140.

In this case, Plaintiffs allege that Defendant represented that Plaintiffs would be receiving the IPO price, and that such representations formed the parties intentions with respect to Section 1.8 of the parties' agreement. Assuming the truthfulness of Plaintiffs' allegations–as the Court must at this stage of the proceedings–and given the test adopted by the Arizona Supreme Court in *Taylor*, the Court finds that the agreement is reasonably susceptible to Plaintiffs' proffered interpretation.

The parties' agreement provides that, at closing, Defendant will purchase Plaintiffs' stock in exchange for a price per share as computed by Defendant. The agreement does not set forth a definite price per share, nor does it set forth a particular method by which Defendant must compute the price per share. Plaintiffs allege that the price per share that was to be computed by Defendant was the IPO price. At this stage of the proceedings, the Court cannot say that Plaintiffs' interpretation is unreasonable. Because there is a genuine issue concerning the phrase "at a price per share computed by" Defendant, the Court must deny Defendant's motion on this point.

Defendant argues that the agreement simply required Defendant, upon closing, to provide Plaintiffs with the price per share that was calculated by Defendant, which ended up being $11.676. This may have been the parties' actual agreement; however, this issue cannot be properly resolved absent further factual development concerning the parties' intent for the phrase "at a price per share computed by" Defendant.

Defendant also argues that, per the agreement, Plaintiffs waived any right to further compensation for their stock subsequent to the closing date, regardless of any increase in the value of the stock. The Court agrees that the agreement provides that, upon receipt of the consideration for the stock, Plaintiffs shall have no further right of compensation for the stock, regardless of any subsequent increase in value after closing. However, assuming the truth of Plaintiffs' allegation–that the parties agreed Plaintiffs would receive the IPO price–Plaintiffs are not seeking any *further* compensation. Rather, Plaintiffs are simply seeking the compensation they allege was originally owed: the IPO price. Hence, given the interpretation proffered by Plaintiffs, the Court finds the limitation contained in the later part of Section 1.8 inapplicable.

D.  *Statute of Limitations*

Defendant argues that Plaintiffs' remaining claims are barred by the statute of limitations governing each claim.[2] The statute of limitations defense may be raised by a motion to dismiss if the running of the statute is apparent on the face of the complaint. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). However, even if the relevant dates alleged in the complaint are beyond the statutory period, the "'complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)). Indeed, "[d]ismissal on statute of limitations grounds can be granted

---

[2] Defendant does not argue that the statute of limitations applies to Plaintiffs' claims in count one: breach of contract. As such, the analysis concerning the statute of limitations applies only to counts two through six.

- 6 -

pursuant to Fed. R. Civ. P. 12(b)(6) 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (quoting *Vaughan v. Grijalva*, 927 F.2d 476, 478 (9th Cir. 1991) (quoting *Jablon*, 614 F.2d at 682)).

The statute of limitations period in Arizona is two years for the torts of negligent misrepresentation and breach of the good faith and fair dealing, as well as for securities fraud. A.R.S. §§ 12-542, 44-1991. The applicable period for actions involving an oral contract or common law fraud is three years. A.R.S. § 12-543. The limitations period for a claim of unjust enrichment is four years. A.R.S. § 12-550. Plaintiffs do not dispute these time limitations. Rather, they argue that the statutes were tolled by the discovery rule.

Under the discovery rule, a cause of action does not accrue until the plaintiff knows or with reasonable diligence should have know the facts underlying the cause. *Doe v. Roe*, 955 P.2d 951, 960 (Ariz. 1998). The discovery rule is premised upon the notion "that it is unjust to deprive a plaintiff of a cause of action before the plaintiff has a reasonable basis for believing that a claim exists." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 967 (1995).

The parties entered into the agreement in February 2002. The IPO of Defendant's stock took place in July 2004. Over five years passed from the date of the IPO until the filing of the present action. It is clear from Plaintiffs' allegations that the "triggering event," for statute of limitations purposes, was the July 2004 IPO. Hence, unless Plaintiffs have properly alleged the discovery rule, Plaintiffs' remaining claims are time-barred.

Plaintiffs include only a single allegation in their complaint with respect to the tolling of the statute of limitations: "Flory did not discover the acts and omissions of Defendants until a discussion in July 2008 with Mr. M[.] Chiodo, a former Executive Director of the Domino's Franchisee Association." (Complaint at p. 7, ¶ 36.) Such an allegation, however, is conclusory in nature. Plaintiffs do not plead any additional facts explaining or otherwise suggesting why the alleged "acts and omissions" of Defendant did not become apparent before July 2008. Plaintiffs do not plead any facts highlighting why or how the conversation

revealed new facts not otherwise known or discoverable to Plaintiffs. As Plaintiffs allege in their own complaint, the initial *public* offering took place in July 2004.[3] There was nothing secretive about Defendant's IPO. In fact, given that the core of Plaintiffs' claims is that the parties reached an agreement that the price per stock would be set according to the IPO–and that Plaintiffs received a price per stock well below the IPO price–it seems incredulous to suggest that Plaintiffs were unaware of the July 2004 IPO at the time it took place. Assuming the veracity of Plaintiffs' allegation that the parties agreed Plaintiffs would receive the IPO price for Defendants' stock, a reasonable person in Plaintiffs' circumstance would have been watchful of the IPO so as to ascertain the IPO price. To the extent Plaintiffs are claiming that Defendants had a fraudulent scheme or plan to pay Plaintiffs well below the IPO price, again, once the IPO took place in July 2004, Plaintiffs should have known at that point that the price they received in payment for their stock was well below the IPO price. Once the IPO took place, and Plaintiffs could compare the IPO price with the price they received per stock, Plaintiffs at that moment had a reasonable basis for believing a claim existed. Plaintiffs have not plead any facts to suggest otherwise. Accordingly, Plaintiffs' remaining claims are time-barred.

However, Plaintiffs have not amended once as a matter of right under Federal Rule of Civil Procedure 15. The Ninth Circuit Court of Appeals has instructed that this Court cannot dismiss a complaint in these circumstances, unless this Court determines that an amendment could not cure the deficiencies. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). In this case, the Court cannot say that the deficiencies could not be cured by amendment; therefore, the Court will grant the motion to dismiss with leave to amend. Nevertheless, Plaintiffs are cautioned that they must plead

---

[3] Defendant, in its motion to dismiss, urges this Court to take judicial notice "of certain facts concerning the alleged IPO, including that the stock offering was a publicized event, the date of the IPO (July 12, 2004) and the stock share price ($13.50-14.00)." (Doc. # 11 at p. 6 n.4.) However, the Court need not take judicial notice of these facts, as they are alleged in Plaintiffs' complaint.

facts, and not mere legal conclusions, as to why their claims are not barred by the statute of limitations as discussed above.

*E. Punitive Damages*

Plaintiff only alleges an entitlement to punitive damages with respect to counts four, five, and six. Because the Court is granting Defendant's motion as to these counts, Plaintiffs have no claim left justifying punitive damages. Moreover, Plaintiffs' only surviving cause of action is a breach of contract claim. "Punitive damages are not usually awarded in contract actions, unless there is an accompanying tort." *Miscione v. Bishop*, 636 P.2d 149, 152-53 (Ariz. Ct. App. 1981). The Court grants Defendant's motion as it relates to punitive damages.[4]

Accordingly,

**IT IS ORDERED** that Defendant Domino's Pizza, LLC's Motion to Dismiss (Doc. # 11) is granted in part and denied in part, as follows: Defendant's motion to dismiss is denied as to Count One; Defendant's motion to dismiss is granted as to Counts Two through Six; Defendant's motion to dismiss is granted as to Plaintiffs' claim for punitive damages.

**IT IS FURTHER ORDERED** that Plaintiffs have 30 days from the date of this Order to file an amended complaint to cure the deficiencies identified herein. If Plaintiffs fail to file an amended complaint within 30 days, the Clerk of the Court shall, without further Court order, dismiss with prejudice Plaintiffs' claims in Counts Two through Six, as well as Plaintiffs' claim for punitive damages.

DATED this 4th day of May, 2010.

James A. Teilborg
United States District Judge

---

[4] Such a conclusion does not preclude Plaintiffs from seeking punitive damages if they file an amended complaint properly alleging a tolling of the statute of limitations, as discussed above.