**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sierra-Sonora Enterprises, Inc., an Arizona corporation; Jackson Hole Partners, LP, an Arizona limited partnership; Grand Teton Partners, LP, an Arizona limited partnership,<br><br>            Plaintiffs,<br><br>vs.<br><br>Domino's Pizza, LLC, a Michigan limited liability company; Domino's Pizza, Inc., a Delaware corporation,<br><br>            Defendants.<br><br>Domino's Pizza, LLC,<br><br>            Counterclaimant,<br><br>vs.<br><br>Sierra-Sonora Enterprises, Inc.; Rick Flory and Lee Robert, husband and wife,<br><br>            Counterdefendants. | No. CV 10-0105-PHX-JAT<br><br>**ORDER** |

//

//

//

Pending before the Court is Defendants' Renewed Motion to Dismiss (Doc. # 38), and Motion of Counterdefendants Sierra-Sonora Enterprises, Inc., Rick Flory, and Lee Robert to Dismiss First Amended Counterclaim (Doc. # 42). For the reasons that follow, the Court grants Defendants' Renewed Motion to Dismiss, and denies the Counterdefendants' Motion to Dismiss.

## I. Background

In February 2002, Plaintiff Sierra-Sonora Enterprises, Inc. ("Sierra") owned and operated over eighty Domino's Pizza franchises. This action arises in connection with the sale of these franchises and the repurchase of the Domino's Pizza stock.

Beginning in 1999, Defendant Domino's Pizza, LLC ("Domino's LLC") approached Rick Flory—the sole shareholder of Sierra and the general partner of Jackson Hole Partners, LP and Grand Teton Partners, LP (together with Sierra and Jackson Hole Partners, LP, "Plaintiffs")—with an offer to sell 770,840.80 shares of TISM, Inc.[1] stock in a private offering to Plaintiffs. An agreement was reached between the parties, and Plaintiffs purchased the offered shares of stock for $5,000,000.00.

On or about February 25, 2002, the parties entered into an asset purchase agreement (the "Agreement") wherein Plaintiffs agreed to sell their franchises and the previously-acquired stock to Domino's LLC. Defendants Domino's Pizza, Inc. ("Domino's Inc.") and Domino's LLC represented that the repurchase of the stock was part of the preparation for an initial public offering ("IPO") of Domino's Inc. stock. In connection with this transaction, Plaintiffs received $9,063,702.66 for the repurchase of their stock.

Plaintiffs allege that Domino's Inc. and Domino's LLC (collectively, "Domino's") represented that the repurchase price of the stock would be the same as the calculated price of Domino's Inc.'s stock to be sold in the IPO. The actual purchase price paid by Domino's LLC for the stock was approximately $11.75 per share. The IPO of Domino's Inc.'s stock

---

[1] TISM, Inc., a former defendant in this action, was reincorporated and merged into Defendant Domino's Pizza, Inc., on or about May 11, 2004. (Doc. # 29 at ¶ 7.)

- 2 -

1  occurred on or about July 13, 2004, and the actual initial public offering price was $14.00
2  per share.  Plaintiffs allege that they have suffered a loss because the amount actually paid
3  by Domino's LLC for the repurchase of the stock was far less than the IPO price.

4  In August 2009, Plaintiffs filed suit in Maricopa County Superior Court, alleging the
5  following causes of action against Domino's LLC: 1) breach of contract; 2) breach of the
6  duty of good faith and fair dealing; 3) unjust enrichment; 4) common law fraud/fraudulent
7  misrepresentation; 5) negligent misrepresentation; and 6) securities fraud.

8  Domino's LLC timely removed to this Court, and filed a motion to dismiss the
9  entirety of Plaintiffs' action (Doc. # 11).  On May 4, 2010, the Court granted in part and
10 denied in part Domino's LLC's motion to dismiss (Doc. # 21).  With respect to Domino's
11 LLC's argument that Counts Two through Six of Plaintiff's Complaint were barred by the
12 statute of limitations, the Court held that once the IPO took place and Plaintiffs could
13 compare the IPO price with the price they received for their stock, Plaintiffs at that moment
14 had a reasonable basis for believing a claim existed.  The Court found that Plaintiffs had not
15 pled any facts to suggest otherwise.  However, because Plaintiffs had not amended their
16 Complaint once as a matter of right under Federal Rule of Civil Procedure 15, the Court
17 granted the motion to dismiss with leave to amend the complaint.  Plaintiffs were cautioned
18 that they must plead facts, and not mere legal conclusions, as to why their claims are not
19 barred by the statute of limitations.

20 Plaintiffs timely filed the First Amended Complaint (Doc. #29), which added
21 Domino's Inc. as a defendant to this action.  Plaintiffs allege the same causes of action
22 against Domino's Inc. and Domino's LLC as the original complaint alleged against
23 Domino's LLC.

24 On June 21, 2010, Domino's filed an Answer to First Amended Complaint and First
25 Amended Counterclaims of Domino's Pizza, LLC (Doc. # 36).  In its counterclaim,
26 Domino's LLC alleges breach of contract and breach of the duty of good faith and fair
27 dealing against Sierra, Rick Flory, and Rick Flory's spouse Lee Robert.
28

On June 25, 2010, Domino's filed the pending Renewed Motion to Dismiss. Shortly thereafter, the Court conducted a Rule 16 scheduling conference, in which the parties agreed to treat Defendants' Renewed Motion to Dismiss as a motion for judgment on the pleadings in accordance with Federal Rule of Civil Procedure 12(c) (Doc. # 39). On July 12, 2010, Counterdefendants Sierra, Rick Flory and Lee Robert filed the pending Motion to Dismiss First Amended Counterclaim in its entirety. The Court will examine each of these motions separately.

## II. Defendants' Renewed Motion to Dismiss

### *A.     Legal Standard*

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings, pursuant to Rule 12(c), "is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990). In other words, dismissal pursuant to Rule 12(c) is inappropriate in circumstances in which, if the facts were as pleaded, they would entitle the plaintiff to a remedy. *Merchants Home Delivery Serv., Inc. v. Hall & Co.*, 50 F.3d 1486, 1488 (9th Cir.1995).

The pleading standard in Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claims showing the pleader is entitled to relief, but demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S. Ct. at 1949. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

1 Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id*.

## B. *Statute of Limitations*

Domino's renews its argument that Counts Two through Six, as well as Count One with respect to breach of an oral contract, of the Plaintiffs' First Amended Complaint are barred by the statute of limitations.

The statute of limitations defense may be raised by a motion to dismiss if the running of the statute is apparent on the face of the complaint. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *U.S. for Use of E.E. Black Ltd. v. Price-McNemanr Const. Co.*, 320 F.2d 663, 666 n. 1 (9th Cir. 1980) ("Where . . . the application of the statute of limitations is apparent on the face of the complaint, the complaint may properly be dismissed by an appropriate motion in advance of trial."). However, even if the relevant dates alleged in the complaint are beyond the statutory period, the "complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

The statute of limitations period in Arizona is two years for the torts of negligent misrepresentation and breach of the good faith and fair dealing, as well as for securities fraud. A.R.S. §§ 12-542, 44-1991. The applicable period for actions involving an oral contract or common law fraud is three years. A.R.S. § 12-543. The limitations period for a claim of unjust enrichment is four years. A.R.S. § 12-550. Plaintiffs do not dispute these time limitations. Rather, they argue that the statutes were tolled by the discovery rule.

Under the discovery rule, a cause of action does not accrue until the plaintiff knows or with reasonable diligence should have known the facts underlying the cause. *Doe v. Roe*, 955 P.2d 951, 960 (Ariz. 1998). The discovery rule is premised upon the notion "that it is unjust to deprive a plaintiff of a cause of action before the plaintiff has a reasonable basis for believing that a claim exists." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 967 (1995).

1  The plaintiff, however, "may not have been aware of all the facts but is charged with a duty to investigate with due diligence to discover the necessary facts." *Doe v. Roe*, 955 P.2d 951, 962 (Ariz. 1998); *see CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A.*, 7 P.3d 979, 982 (Ariz. Ct. App. 2000) ( "[A]ccrual requires only actual or constructive knowledge of the fact of damage, rather than of the total extent or calculated amount of damage[.]"). Indeed, "the requirement that parties exercise reasonable diligence safeguards against cases where a plaintiff has truly allowed his claim to become stale." *Doe*, 955 P.2d at 969 (citing *Gust, Rosenfeld & Henderson*, 898 P.2d at 966–69).

The parties entered into the Agreement on or about February 25, 2002. The IPO of Defendant's stock took place on or about July 13, 2004. Over five years passed from the date of the IPO until the filing of the present action on August 21, 2009. Plaintiffs were permitted to amend their complaint to cure the statute of limitations deficiencies by properly alleging the discovery rule. For the foregoing reasons, the Court finds Plaintiffs have not pled sufficient facts to demonstrate why Count One (breach of oral contract) and Counts Two through Six are not time-barred. It remains clear from Plaintiffs' allegations that the triggering event, for statute of limitations purposes, was the July 2004 IPO.

Plaintiffs do not plead any facts explaining how Plaintiffs could not discover with reasonable diligence before July 2008 that the shares of stock were undervalued in light of the IPO price per share. "[T]he important inquiry in applying the discovery rule is whether the plaintiff's injury or the conduct causing the injury is difficult for plaintiff to detect." *Doe*, 955 P.2d at 968 (quoting *Gust, Rosenfeld & Henderson*, 898 P.2d at 966–69). As Plaintiffs allege in their own complaint, the initial *public* offering took place in July 2004. There was nothing secretive about Domino's IPO. In fact, given that the core of Plaintiffs' claims is that the parties reached an agreement that the price per stock would be set according to the IPO—and that Plaintiffs received a price per stock well below the IPO price—it seems incredulous to suggest that Plaintiffs were unable to discover the price per share from the July 2004 IPO at or around the time the IPO took place. Assuming the parties agreed that Plaintiffs would receive the IPO price for Domino's Inc.'s stock, a reasonable person in

- 6 -

Plaintiffs' circumstance would have been watchful of the IPO so as to ascertain the IPO price. "The purpose of the statute of limitations is to 'protect defendants and courts from stale claims where plaintiffs have slept on their rights.'" *Doe*, 955 P.2d at 960 (quoting *Gust, Rosenfeld & Henderson*, 898 P.2d at 968). Once the IPO took place, and Plaintiffs could compare the IPO price with the price they received per stock, Plaintiffs at that moment had a reasonable basis for believing a claim existed. Plaintiffs do not allege that they attempted to compare the prices and were unable to do so. Rather, it appears that Plaintiffs slept on their rights for purposes of the discovery rule.

Plaintiffs state that they "could not readily compute the difference in value" between the IPO price per share and the price per share received by Plaintiffs under the Agreement, due to various adjustments and changes (*i.e.*, conversions and reserve splits) in Domino's Inc. stock. However, Plaintiffs do not allege that they spent the better part of the next four years attempting to discover and calculate the price difference. Instead, Plaintiffs allege that Domino's did not make its calculation available to Plaintiffs, and Domino's did not make any effort to advise Plaintiffs of the difference in value between the price per share received by Plaintiffs under the Agreement and the IPO price per share. Plaintiffs appear to allege that the statute of limitations tolled because Plaintiffs presumed that Domino's "played fairly with them" (Doc. # 29 at ¶ 54). However, Plaintiffs fail to allege that Domino's made any representations after the IPO indicating Plaintiffs had been compensated in accordance with the Plaintiffs' understanding of the Agreement.

Upon request, in late 2007, Domino's sent Rick Flory information concerning the IPO. The information did not contain computations of the prices per share. Plaintiffs do not allege that Domino's provided misinformation or misleading calculations. Further, Plaintiffs do not plead any facts indicating they attempted to calculate the price per share for themselves, or that they asked Domino's to provide them with the calculations. Instead, Plaintiffs again allege that they "had no reason to believe that they had not received the amount they were entitled to receive" (Doc. # 29 at ¶ 58). Accordingly, Plaintiffs made no effort to determine whether the price per share received by Plaintiffs was equivalent to the IPO price per share.

Plaintiffs allege that: "Flory had no reason to discover the breaches, misrepresentations, and omissions of Domino's until a discussion in July 2008 with Mr. Michael Chiodo, a former Executive Director of the Domino's Franchisee Association." (Doc. # 29 at ¶ 59.) As the Court stated in its May 4 Order, this allegation is conclusory in nature, and does not support tolling the statute of limitations.

While calculations of the price per share may not have been readily computable as Plaintiffs allege, Plaintiffs do not indicate that they even attempted to undertake such calculations. Plaintiffs ask the Court to toll the statute of limitations, because Plaintiffs trusted Domino's to pay them the agreed-upon amount. This is not grounds for tolling the statute of limitations under the discovery rule when Plaintiffs had constructive knowledge of the IPO price per share on or immediately after July 13, 2004. Accordingly, Count One (breach of oral contract) and Counts Two through Six are time-barred.

### C.  *Punitive Damages*

Plaintiffs allege an entitlement to punitive damages with respect to Counts Five and Six. Because the Court is granting Defendant's motion to dismiss as to these counts, Plaintiffs have no claims left justifying punitive damages. Moreover, Plaintiffs' only surviving cause of action is a breach of written contract claim. "Punitive damages are not usually awarded in contract actions, unless there is an accompanying tort." *Miscione v. Bishop*, 636 P.2d 149, 152–53 (Ariz. Ct. App. 1981). Accordingly, the Court grants Defendant's motion as it relates to punitive damages.

### D.  *Breach of Contract Claim*

Domino's seeks dismissal of all claims against Domino's Inc. Based on the Court's dismissal of Count One (breach of oral contract) and Counts Two through Six as barred by the statute of limitations, the only remaining claim against Domino's is Count One (breach of written contract).

"To state a claim for breach of contract, the complaint must allege an agreement, the right to seek relief, and breach by the defendant." *Commercial Cornice & Millwork, Inc. v. Camel Constr. Services Corp.*, 739 P.2d 1351, 1355 (Ariz. Ct. App. 1987) (citing *City of*

- 8 -

*Tucson v. Superior Court*, 569 P.2d 264, 266 (Ariz. Ct. App. 1977)). Domino's Inc. is not a party to the Agreement, and Plaintiffs fail to allege any breach by Domino's Inc. of the Agreement or any other written contract. Therefore, dismissal of Domino's Inc. from this action is appropriate.

## III  Motion to Dismiss First Amended Counterclaim

### *A.  Legal Standard*

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must meet the requirements of Rule 8(a)(2). As set forth above, Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S. Ct. at 1949.

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter[2] of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

---

[2] Given the procedural posture of the case and the pending motion to dismiss, the Court must construe the facts alleged in the counterclaim in the light most favorable to Domino's LLC.

- 9 -

### B.     *Enforceability of Indemnification Provision*

Counterdefendants Sierra, Rick Flory and Lee Robert (hereinafter, the "Counterdefendants") argue that Domino's LLC's First Amended Counterclaim should be dismissed as a matter of law because the indemnification provision in the Agreement is prohibited by Arizona Revised Statutes section § 44-2000, which provides:

> Any condition, stipulation or provision binding any person acquiring any security to waive compliance with this chapter or chapter 13 of this title or of the rules of the commission is void.

Domino's LLC has responded by arguing that section 44-2000 is inapplicable to the indemnification provision in the Agreement. The Court agrees that section 44-2000 is not grounds for dismissing the counterclaim.

Section 44-2000 states that a provision is void if it binds "any person *acquiring* any security" to waive compliance with Arizona's securities laws and regulations. This statute is an anti-waiver provision. *See R&L Ltd. Inv. v. Cabot Inv. Properties, LLC*, __ F. Supp. 2d __, 2010 WL 2983028, at *3 (D. Ariz. July 27, 2010) (barring enforcement of a choice of law provision in an investment agreement).[3]

As a matter of law, the indemnification provision in the Agreement does not bind Domino's LLC, as the person acquiring the security,[4] to waive compliance with Arizona's securities laws and regulations. Counterdefendants cite several cases discussing the federal

---

[3] This is currently the only published court opinion interpreting Arizona Revised Statutes section 44-2000.

[4] "Security" is defined as "any note, stock, treasury stock, bond, commodity investment contract, commodity option debenture, evidence of indebtedness, certificate of interest or participation in any profit-share agreement, collateral-trust certificate, preorganziation certificate or subscription, transferable share, investment contract, viatical or life settlement investment contract, voting-trust certificate, certificate of deposit for security, fractional undivided interest in oil, gas or other mineral rights, real property investment contract or, in general, any interest or instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing." A.R.S. § 44-1801(26).

- 10 -

1 analog to section 44-2000. These are cases in which the plaintiffs were the purchasers of the
2 securities, and as such, were required by contract to waive compliance with federal securities
3 laws in connection with their acquisition of securities. Here, Counterdefendants did not
4 acquire securities in connection with the Agreement. Consequently, Counterdefendants
5 could not be required to waive securities laws in violation of section 44-2000, which
6 provides that the person acquiring the securities must be bound to waive the securities laws
7 in order for the contract provision to be considered void.

8 Further, even if Counterdefendants were in a position to properly assert a defense to
9 Domino's LLC's claims under section 44-2000, there are no statutes or case law to support
10 a finding that, as a matter of law, Domino's LLC has waived compliance with Arizona's
11 securities laws and regulations by asserting claims based on the indemnification provision
12 in the Agreement. Further, as Domino's LLC points out in its response, Plaintiffs' statutory
13 securities claim is barred by the two-year statute of limitations, and, therefore, cannot be the
14 basis for an allegation that the indemnification provision has resulted in a violation of
15 Arizona's securities laws and regulations.

16 Based on the foregoing, the Court finds that the indemnification provision in the
17 Agreement is not void and unenforceable as a matter of law under section § 44-2000, and
18 Domino's LLC's counterclaims are not prohibited by section 44-2000.

19 ***C.   Breach of Contract and Breach of Duty of Good Faith and Fair Dealing***

20 Counterdefendants move for the dismissal of Rick Flory and Lee Robert, because
21 neither Rick Flory, nor his spouse Lee Robert, is a party to the Agreement. While this is
22 correct, Domino's LLC's claim for breach of contract and breach of the duty of good faith
23 and fair dealing is sufficiently pled to overcome Counterdefendants' motion to dismiss.

24 As stated above, "[t]o state a claim for breach of contract, the complaint must allege
25 an agreement, the right to seek relief, and breach by the defendant." *Commercial Cornice*
26 *& Millwork, Inc.*, 739 P.2d at 1355 (citing *City of Tucson*, 569 P.2d at 266). Domino's LLC
27 pleads all three elements in its counterclaim. The agreement at issue is the Agreement. With
28 respect to right to seek relief, Domino's LLC alleges that "[a]s the sole shareholder, [Rick]

- 11 -

1   Flory has personal liability for Sierra's corporate debts and acts arising during the period in
2   which the corporation continued to engage in business after dissolution of the corporate
3   entity" and that Rick Flory "purposely voluntarily dissolved Sierra before filing this lawsuit
4   in bad faith and with the fraudulent intent to deprive Domino's of its indemnification
5   protections in the [Agreement]" (Doc. # 36 at ¶¶ 9, 16).

6   Arizona Revised Statute section 10-204 provides that persons purporting to act on
7   behalf of a corporation with actual knowledge that no corporation exists are jointly and
8   severally liable for all liabilities created while so acting. Domino's LLC argues that this
9   statute provides the basis for its claims against Rick Flory and Lee Robert. Domino's LLC's
10  counterclaim alleges that Counterdefendants have breached the indemnification provisions
11  and breached their inherent indemnification obligations. Taking the allegations in the
12  counterclaim as true, and based on the pleading standard in Federal Rule of Civil Procedure
13  8(a)(2), Domino's LLC has stated claims for which relief can be granted against Rick Flory
14  and his spouse Lee Robert. Counterdefendants can argue the merits of those claims in a
15  motion for summary judgment.

16  Finally, Counterdefendants set forth an alternate theory for dismissing the breach of
17  the duty of good faith and fair dealing claim based on the failure to state a tort claim. The
18  Court does not need to analyze the merits of this argument, because Domino's LLC concedes
19  that it does not make a tort claim; it makes a contract claim. (Doc. # 48 at p. 8, lines 21–23.)
20  The Court finds that Domino's LLC's claim for breach of the duty of good faith and fair
21  dealing is not subject to dismissal for failure to state a claim upon which relief can be
22  granted.

23  Accordingly,

24  **IT IS ORDERED** that Defendants' Renewed Motion to Dismiss (Doc. # 38) is
25  GRANTED. Domino's Pizza, Inc. is dismissed from this action, and Plaintiffs' remaining
26  claim is against Domino's Pizza, LLC for breach of written contract.

**IT IS FURTHER ORDERED** that the Motion of Counterdefendants Sierra-Sonora Enterprises, Inc., Rick Flory, and Lee Robert to Dismiss First Amended Counterclaim (Doc. # 42) is DENIED.

DATED this 3rd day of November, 2010.

_____
James A. Teilborg
United States District Judge